**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ROBERT LEE HILL, JR.**,
Plaintiff, pro se,
v.
**AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (ASCAP);** and
**ROYALTY EXCHANGE, INC.**,
Defendants.

# COMPLAINT AND JURY TRIAL DEMAND

## I. NATURE OF THE ACTION

1. Plaintiff Robert Lee Hill, Jr. ("Plaintiff"), proceeding pro se, brings this action against the American Society of Composers, Authors and Publishers ("ASCAP") and Royalty Exchange, Inc. ("Royalty Exchange") for material breaches of contract, systemic accounting errors, and the unauthorized diversion of performance royalties. This dispute arises from errors in musical work registration, a bank-returned electronic transfer that ASCAP improperly recorded as a debt, false financial statements communicated between the Defendants, the unauthorized diversion of international writer share royalties, and an unlawful total suspension of Plaintiff's membership privileges.

2. As a direct and foreseeable result of Defendants' overlapping actions, payment holds, and a total digital account lockout, Plaintiff suffered catastrophic financial destitution, including the loss of his home, the repossession of his vehicle, severe damage to his commercial creditworthiness, and acute personal distress. Plaintiff seeks an equitable accounting, declaratory relief, and compensatory, consequential, and statutory damages to remedy these contractual injuries.

## II. JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (Diversity of Citizenship). The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the dispute is between citizens of completely different states. Plaintiff is an individual residing in and a citizen of the State of Georgia. Defendant ASCAP is an unincorporated association with its principal place of business located in New York, New York. Defendant Royalty Exchange, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Denver, Colorado. Complete diversity exists between all parties.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant ASCAP maintains its principal place of business and corporate legal headquarters at 250 West 57th Street, New York, NY 10107, and a substantial part of the operational events, contract executions, accounting actions, and communications giving rise to Plaintiff's claims occurred within the Southern District of New York.

## III. PARTIES

5. Plaintiff Robert Lee Hill, Jr. is an independent songwriter and musical creator who is a member of ASCAP (Member ID: 1707840) and resides in Mableton, Georgia. At all times relevant, Plaintiff maintained exclusive rights to collect his songwriter's writer share in his musical catalogs.

6. Defendant ASCAP is a performing rights organization headquartered in New York, New York, that administers public performance licenses for musical works, collects licensing fees, maintains member ledger accounts, and distributes performance royalties to its writer members pursuant to the ASCAP Compendium and membership agreements.

7. Defendant Royalty Exchange, Inc. is an online marketplace and catalog administration platform that facilitates the sale of specified royalty streams and enters into contractual royalty purchase agreements with creators.

## IV. FACTUAL ALLEGATIONS

### A. "HOLY SMOKES" Registration Defects and Distorted Ledger Entries

8. Plaintiff is the creator of the musical work "HOLY SMOKES" (Work ID: 915921350). A dispute arose due to ASCAP's negligent metadata administration, which incorrectly merged and associated Plaintiff's profile with an alternate version of the work rather than his distinct acoustic arrangement.

9. On July 29, 2022, Plaintiff notified ASCAP’s repertory staff in writing, explicitly stating that the registration lacked the proper "(Acoustic Remix)" designation and demanded that his profile be decoupled from the original merged record. ASCAP failed to correct the metadata, causing an erroneous quarterly distribution allocation to trigger under the defective work record in October 2022.

### B. The Returned Electronic Transfer and Fabricated Debit Balance

10. On July 8, 2022, ASCAP attempted to issue an electronic direct deposit of Plaintiff's accrued performance royalties to a closed bank account. Plaintiff's financial institution, PNC Bank, fully rejected and returned the electronic transfer to ASCAP. Consequently, Plaintiff never received these funds.

11. On July 13, 2022, Plaintiff opened ASCAP Inquiry ID 00491603 to locate the missing funds. ASCAP’s Member Inquiry & Resolution Services responded in writing, explicitly confirming: "Looking at your previous inquiry and your account, it does appear that your previous bank did return the funds.". Despite this formal admission, ASCAP failed to reissue the returned funds to Plaintiff.

12. Rather than reissuing the money or holding it as an internal credit, ASCAP's accounting department recorded a negative domestic writer debit of -$11,208.79 on Plaintiff's member portal dashboard on January 6, 2023. This debit was mathematically faulty, as the underlying transaction was of a lower baseline amount and the returned funds remained entirely within ASCAP's possession. ASCAP personnel consistently provided contradictory information, falsely claiming internally that the funds were "paid out," while simultaneously acknowledging on the ledger that the transfer had failed.

### C. False Disclosures to Royalty Exchange and Resulting Commercial Credit Harm

13. On May 2, 2023, an authorized ASCAP legal representative transmitted an email communication to Royalty Exchange's corporate counsel, copying Plaintiff. The email falsely and inaccurately stated that the -$11,208.79 negative balance was properly applied because the funds had already been successfully paid out to Plaintiff.

14. ASCAP made this false statement despite possessing written internal confirmation that the bank had returned the funds. This misrepresentation severely compromised Plaintiff’s commercial reputation and creditworthiness with his catalog administration partner. Relying directly on ASCAP's inaccurate disclosure, Royalty Exchange immediately halted Plaintiff's active catalog auctions and blocked his capability to secure necessary secondary financial advances.

**D. "U Digg" Correspondence and the Coerced International Royalty Assignment**

15. Plaintiff is a primary writer and creator of the track "U Digg" (ASCAP Work ID: 917438969). On May 1, 2026, Plaintiff initiated written correspondence with ASCAP's Senior Vice President of Legal, Richard Reimer, contesting a long-standing misallocation of his international Writer's Share royalties for this work.

16. On May 5, 2026, Richard Reimer responded via email, stating that ASCAP was actively correcting its internal records to ensure that international royalties attributable to "U Digg" would be properly directed to Plaintiff. On May 20, 2026, Reimer explicitly confirmed in writing that ASCAP had previously re-directed those international royalties to Royalty Exchange as a result of prior instructions.

17. Simultaneously, Royalty Exchange's Corporate Counsel, Rob Bernhard, intervened via email. Knowing that Plaintiff was in a severe financial crisis and actively trying to recover his repossessed vehicle, Royalty Exchange leveraged Plaintiff's housing and transit destitution. On May 19, 2026, Rob Bernhard transmitted an amended agreement via email to ASCAP, claiming that Plaintiff had decided to assign both domestic and international royalties for "U Digg" to Royalty Exchange.

18. Plaintiff was forced to submit to these unconscionable assignment terms under extreme economic duress because Royalty Exchange held separate, undisputed catalog funds in their possession, refusing to release them unless Plaintiff signed a restrictive communication framework and behavioral release surrendering his right to call ASCAP's support lines by telephone.

19. While Plaintiff’s actual earnings were withheld or diverted, ASCAP issued an official Form 1099-MISC reporting $14,798.54 in taxable earnings to Plaintiff for the 2022 tax year. This forced Plaintiff to face severe federal tax liabilities on income that Defendants had intercepted and that he never physically received.

**E. "What's Happening" Royalties, Exhaustion of Remedies, and the July 15, 2026 Lockout**

20. Plaintiff is an entitled royalty participant in the musical work "What's Happening" (performed by Latto and Young Nudy). While ASCAP made an introductory distribution associated with this work, all subsequent international and domestic royalties generated across subsequent distribution cycles have been entirely withheld from Plaintiff.

21. On July 15, 2026, ASCAP issued a formal Notice of Suspension to Plaintiff, invoking Section 5.1 of the ASCAP Compendium. This administrative action completely severed Plaintiff's digital portal access, froze his regulatory catalog registration privileges, prohibited direct administrative inquiry, and intercepted 100% of his incoming quarterly performance royalties across all active works.

22. Plaintiff engaged in extensive efforts to resolve these ledger discrepancies and the total lockout directly through administrative channels. On October 13, 2026, Plaintiff sent a formal Final Notice to Richard Reimer warning of imminent federal litigation regarding the withheld payments. On October 16, 2026, Plaintiff issued a further formal request for information to both Reimer and Rob Bernhard. Defendants completely failed to provide the necessary accounting data or restore portal access, fully exhausting all available pre-litigation administrative remedies.

## V. CLAIMS FOR RELIEF

### COUNT I — BREACH OF CONTRACT

(Against Defendant ASCAP)

23. Plaintiff realleges paragraphs 1 through 22 as if fully set forth herein.

24. Plaintiff's membership agreement and the incorporating provisions of the ASCAP Compendium constitute a valid, legally binding contract between Plaintiff and ASCAP. This contract requires ASCAP to maintain meticulous accounting ledgers, accurately track work metadata, and distribute proper percentage shares of performance royalties to its writer members on a strict quarterly schedule.

25. ASCAP materially breached its contractual obligations by:

- Failing to accurately register and correct metadata for the work "HOLY SMOKES";
- Improperly fabricating a -$11,208.79 debt balance out of a returned bank transfer that remained in ASCAP's ledger;
- Misrouting Plaintiff's contractually retained international writer share royalties for "U Digg" to a third party prior to May 2026; and
- Completely freezing Plaintiff's administrative rights, work registration functionalities, and capturing 100% of his royalty streams for the work "What's Happening" under an unlawful application of Section 5.1 of the Compendium.

26. As a direct, proximate, and foreseeable consequence of ASCAP's material breaches, Plaintiff suffered catastrophic financial injury. ASCAP had direct written notice that its persistent accounting holds and errors were inducing acute housing and credit crises; therefore, ASCAP is liable for Plaintiff's resulting eviction, loss of vehicle, and tax liabilities as consequential damages.

### COUNT II — BREACH OF CONTRACT

(Against Defendant Royalty Exchange, Inc.)

27. Plaintiff realleges paragraphs 1 through 22 as if fully set forth herein.

28. The asset purchase agreements and catalog assignment schedules executed between Plaintiff and Royalty Exchange constitute valid, binding contracts governing the precise scope of royalty rights transferred. Under the explicit terms of these agreements, Plaintiff retained exclusive ownership and collection rights over his international writer share distributions.

29. Royalty Exchange materially breached these agreements by exploiting Plaintiff's immediate vehicle repossession and housing crises to extract an unauthorized assignment of international performance royalties generated by the work "U Digg," which fell completely outside the legal scope of the original contract schedules.

30. Royalty Exchange further breached its implied covenant of good faith and fair dealing by withholding undisputed funds from an entirely independent catalog transaction to force the execution of an unconscionable waiver restricting Plaintiff's administrative communications.

31. As a direct and proximate result of Royalty Exchange's breaches, Plaintiff suffered extensive economic harm, commercial credit disqualification, and loss of property.

**COUNT III — EQUITABLE ACCOUNTING**

(Against All Defendants)

32. Plaintiff realleges paragraphs 1 through 22 as if fully set forth herein.

33. A fiduciary and special administrative relationship exists between Plaintiff, as a song creator, and ASCAP, as the performing rights organization entrusted to collect and accurately hold his property in trust. A contractual and transactional relationship exists between Plaintiff and Royalty Exchange regarding specific catalog distributions.

34. The financial accounts, territorial receipts, international exchange rates, metadata logs, and distribution pathways concerning Member ID 1707840 and Work IDs 917438969 ("U Digg"), 915921350 ("HOLY SMOKES"), and "What's Happening" are highly complex and uniquely within the exclusive possession and control of Defendants.

35. Plaintiff has disputed the entries on his ledger for years, including a fabricated -$11,208.79 debit entry and the unexplained diversion of international funds. Plaintiff has no adequate remedy at law to ascertain the exact metrics of his stolen or diverted earnings without a court-ordered forensic audit.

36. Plaintiff is entitled to an order commanding Defendants to render a full, transparent, and independent forensic accounting of all financial ledgers, international licensing receipts, and metadata trails from 2022 to the present.

**COUNT IV — DECLARATORY RELIEF**

(Against All Defendants)

37. Plaintiff realleges paragraphs 1 through 22 as if fully set forth herein.

38. An actual, justiciable, and concrete controversy exists between Plaintiff and Defendants concerning the exact contractual scope of rights transferred under Plaintiff's catalog agreements, the

legality of ASCAP's ongoing total payment holds, and the proper routing pathways for Plaintiff's international writer's shares.

39. Plaintiff requests a binding judicial declaration pursuant to 28 U.S.C. § 2201 establishing:

- That Plaintiff retains full ownership of his international writer's share royalties under the valid Royalty Exchange agreements;
- That ASCAP's ongoing application of a -$11,208.79 debt balance is null and void; and
- That ASCAP must immediately dismantle the total membership lockout and restore Plaintiff's portal and catalog registration access.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert Lee Hill, Jr. respectfully requests that this Court enter judgment against Defendants and grant the following relief:

- **A. Compensatory and Consequential Damages:** Awarding full monetary damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for the loss of his home, vehicle, commercial credit, out-of-pocket expenses, and federal tax liabilities proximately caused by Defendants' breaches;
- **B. Equitable Accounting:** Ordering a comprehensive, independent forensic audit of ASCAP's and Royalty Exchange's internal ledgers, operational logs, international territorial receipts, and metadata history regarding Member ID 1707840 and Work IDs 917438969, 915921350, and related catalog lines from 2022 to the present;
- **C. Declaratory Judgment:** Entering a binding declaration clarifying the scope of transferred rights, invalidating the ghost debit balances, and restoring Plaintiff's full membership administration privileges;
- **D. Statutory Pre-Judgment Interest:** Awarding 9% annual pre-judgment interest on all wrongfully delayed or misrouted principal royalty distributions from their original contractual due dates pursuant to New York CPLR § 5001; and
- **E. Post-Judgment Interest and Costs:** Awarding all legally available post-judgment interest and court costs associated with bringing this action.

**VII. JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 20, 2026

Respectfully Submitted,

/s/ Robert Lee Hill, Jr.

Robert Lee Hill, Jr., Plaintiff Pro Se
6660 Mableton Pkwy, Apt 3904
Mableton, GA 30126
Phone: 305-305-1584
Email: rhill3485@gmail.com